Good morning, Your Honor. Paul Cohenhoven appearing for Allie Tamboura, and I'd like to reserve three minutes for rebuttal. Sure. Well, when the judge arraigned Allie Tamboura on a probation violation, the judge said there isn't any ambiguity as to what's going to happen. If there's a violation of probation, he's going to prison, and it doesn't matter what kind of violation it is. The judge unambiguously predetermined what sentencing decision he would make. I don't understand, Your Honor, I don't understand what's wrong, what the judge did wrong. As a trial judge, when I used to do this both in State court and in as a district judge, like Judge Huff here, I can't tell you the number of times that I told a defendant, these are the terms and conditions of your probation or supervised relief, release. And if I suspended sentence when I was in State court, I would say, you come back here and you violate the terms and conditions of your probation, guess what's going to happen? Yes, Your Honor. You're going to get the suspended sentence. But, Your Honor, the judge What's wrong with that? I don't understand what's wrong with that. Because the judge has a choice to make. The judge doesn't have to impose the prison sentence. The judge can continue the defendant on probation. So there's a choice to make.  But the judge made that same statement when he was arraigning him on the probation violation, and at that point, the time for warning has passed. But he also made it pretty clear that there was the he had to find that there was a that there was a violation of the terms and conditions of probation. That's correct, Your Honor, but the judge, after finding it. And he conducted a very extensive two-day, a two-day evidentiary hearing to determine whether or not all these incidents with the children and whatnot and the payment of the alimony or the support. The judge, before it even heard any of the evidence, the judge said, I don't care what kind of violation there is. I'm going to sentence you to prison, when it had a choice. It didn't have to sentence him. If it sentenced him to prison, he had to impose 14 years. I mean, that was resolved. But the decision whether to impose prison or grant him continued probation was an option. And the judge was saying ahead of time, before it heard any evidence. So it hadn't heard the two days of evidence. It had heard nothing, and it said, I don't care what kind of violation you have. I'm sending you to prison. And that's what's wrong. But so I think what Judge Paez was saying is that if it was pretextual to hold this hearing, why wouldn't she just do a pro forma hearing, like 10 minutes? It was a full, complete record. Well, Your Honor, I don't think it's pretextual. It's a record. Because the court is still going to determine whether there's a probation violation. But the judge is saying, if I find a probation violation, you're going to prison. So the fact that it held a complete hearing is irrelevant. It's not that the judge predetermined it was going to find he violated probation. But the court did predetermine that if it found a probation violation, it didn't matter what it was. Those were the judge's words. So what about the court? The result would be a prison sentence. Did the Court of Appeals for the State of California then review this? It did. But what the court said was? So maybe the language was in – is a little strong, but – It's a promise, Your Honor. It's a predetermination. And I don't know how you can distinguish this case from Gonzales v. Johnson. If you read what the judge said in Gonzales v. Johnson, it's exactly the same thing. The judge said, if I find a violation, you're going to prison for life. And the court there said, you can't predetermine what ruling you're going to make before you've heard the evidence. You just can't do that. And what the court of appeal did with this, the State court of appeal acknowledged Johnson v. Gonzales. But then the court said there's no showing that the court had a predetermination to impose a prison sentence. And yet that's exactly what the judge said. The judge said, I don't care what kind of violation you have, you're going to prison. And it said it several times. And the judge can't do that before it hears the evidence. That's the issue here. And whether it held a complete hearing – I have a question for you. In your view of the case, does it matter if the judge in the later hearing finds serious violations of probation conditions? It doesn't matter. It doesn't matter because the judge made an unequivocal statement that he was going to impose a prison sentence. That's correct, Your Honor. So it wouldn't matter if the guy had returned and beaten his wife or whatever, right? It doesn't matter. It wouldn't matter because the judge cannot say ahead of time what it's going to do. And so to say, well, he conducted a full hearing, he let him present what he wanted, he requested a probation report, none of that is relevant because the judge said, I don't care what kind of violation there is. If I find a violation, you're going to prison. But so wouldn't this also extend in, say, our Federal court proceeding supervisory lease, where you're giving notice to the person ahead of time, please don't violate the law because there's going to be serious consequences. Couldn't one then take that case and then say, you can't say anything, because that could be later construed by someone to say that the judge had a predetermined notion of what penalty was appropriate before the court heard the evidence. It would depend on the language, Your Honor. In this case, the problem is that the judge expressly said that it wouldn't matter what the violation was. And that's the point. You're talking about the time of the plea hearing or are you talking about the arraignment on the violation? See, to me, the arraignment is significant because at that point, the time for warrant is passed. If you take Judge Huff's question, in this particular case, at the time of the plea, the judge was crystal clear. Absolutely. If you violate probation, 14 years. Now, the 14 years isn't the issue, Judge. No, no, no. But he said if he violated probation, and I think it was at the plea hearing where he said he used the term promise. That was actually when he sentenced him. When he sentenced him, he said, I kept my promise. So there was some pretty strong language. He was very strong, Your Honor. Yes. There was some pretty strong language at the time of the plea. He said if you violate probation in any way, you will go to state prison. That's what he said at the time of the plea. At the time of the plea. Okay. Now, suppose at the time he came in for the arraignment on the probation violation, the judge didn't say anything. He just said, okay, he disputes that he violated, we're going to hold a hearing, conducts his two-day hearing. Then at the time of his sentence, he says, remember what I told you at the time of the arraignment, of the time of the plea? If I find a violation, you're going to go to prison? Yeah. There's a violation, you're going to prison. Is that, in your view, is that?  That isn't our case, Your Honor. I think it's very clear. What would be your view? I'd have a weaker argument, because I think at the time of the plea, it's appropriate for a judge to warn a defendant of the consequences of violating probation. What you have here is a judge who says, if you violate probation in any way, you're going to prison. And then at the arraignment, he comes back and says, well, I haven't even had this hearing yet, so I haven't made a finding that you violated probation. But I'm telling you, I don't care what the violation is. If you violate it, you're going to prison. And that's not right, because the judge has a choice to make whether to send to prison or to grant continued probation. And that choice was made to counsel. So counsel, this is a State prisoner habeas case. Yes, Your Honor. So that what is the Supreme Court precedent that you think is being applied in an objectively unreasonable fashion? Well, I would say, too, Your Honor, that I think my primary claim, the State court actually acknowledged the Federal precedent. My primary claim is that it made an unreasonable determination of the facts. But as to the question about the cases, there's Gagnon v. Scarpelli, Morrissey v. Brewer, and Black v. Romano, which says, first of all, you're entitled to a hearing before a neutral hearing body. Black v. Romano is saying that you must have the opportunity to say there's a justifiable excuse for any violation, and that revocation is not the appropriate disposition. And that's what was violated here. That's the controlling precedent. And what the State court did to get around this was it basically said there was no showing the court had predetermined to impose a prison sentence. That's an unreasonable interpretation of what the judge said. The judge said if you violate probation in any way, you're going to prison. That's a predetermination of what decision is going to make after the fact.  Go ahead, Your Honor. Go ahead, Your Honor. I just have one last question for you. The probation report, apparently there was a probation report prepared on the violation. Yes, Your Honor. And I didn't see it. I looked for it in the record, but I didn't see it. I'm sorry, Your Honor. I, again, I just have to say. What was the probation officer's recommendation to the judge? I don't recall. After he found a violation. Do you recall? I do not recall. Okay. I do not recall. Is it clear that he could have not imposed a prison sentence if he found a violation? Yes, Your Honor. It's in the briefs that there's State law that says that even when a prison sentence is suspended, the court has the option of continuing someone on probation. But I was curious whether or not he had a choice between no prison, I mean, no violation of just simply reinstating probation on the same terms and conditions, and whether he could have or any, or he was just stuck with 14 years. That's pretty clear. And, again, it's in the brief, Your Honor, in the opening brief, that the court indeed, it couldn't impose less than 14 years if it sends him to prison, because that is the nature of a suspended sentence. There is no choice. He could have put him back in jail for a year. Exactly. It could have continued him on probation, changed the conditions, imposed a county jail sentence. Right. As a condition of probation. As a condition of probation. Right. And so that was the choice that the judge never considered. Rather, it predetermined what it was going to do. It predetermined that that would never be considered that option. At the time of the plea, the judge was reluctant. He expressed his serious concern with what had happened, the underlying charge. Yes, sir. Sure. And that, again, I have no complaint with that, Your Honor. That's certainly broken. All right. Okay. I'll give you a minute for rebuttal. Okay. Good morning, Your Honors. Joan Killeen for Respondent. May it please the Court. It appears the Court is well familiar with the facts of this case, and the issue is straightforward. It's whether a palant was deprived of his due process right to an impartial, unbiased judge. And counsel has focused on a number of statements that the trial court made in this case, both at the original sentencing and at what he calls the arraignment, and then after the evidentiary hearing on the probation violation. And we've presented the record of all of these proceedings because I think it's extremely important that these comments be taken in context. And to start with the sentencing, the original sentencing, it was a very lengthy sentencing. This defendant was charged with very serious crimes. He was able to plead to two of the counts for a suspended sentence of 14 years. It was and I think the judge felt at the time a very generous disposition, but one which he felt this particular defendant could comply with the conditions of probation given his background. He was a businessman. You know, he had a lot going for him. And so the judge at the sentencing hearing, when he was reviewing the terms of probation, I believe went to great lengths to really explain all the parameters, the stay away, the no contact, the no monitoring, went over all of these things in detail, said don't violate, you'll be back here, serious consequences. He said that over and over again. Then at the arraignment on the probation violation, at that point there had been a petition filed that he had violated the stay away order and failed to pay child support. So the court's comments at that point were not that if you violate probation in any way you're going to prison. The comments were we have these two allegations. If you don't admit them, we have a hearing. And he said we're not negotiating it in the sense that as counsel has acknowledged under California law, if there's a sentence imposed but suspended, and here it was 14 years, the court has no discretion to impose a lower sentence for State prison. The court does have discretion to not impose jail time at all and simply continue probation. The court was well. Breyer to impose a year in the county jail and continue probation on a condition. Yes. I mean, he could. To modify the terms and conditions of probation to include another period of time in the county jail. Right. Exactly. And the issue here was whether or not the violations were sufficiently serious that the court felt that the prison term was warranted as opposed to another continuation of probation. And I'd like to cite one statement the Court made at the conclusion of this very lengthy hearing, which, and I apologize to the Court because I should have cited this in my brief and I did not. It's in the record. It's in the second volume of the supplemental excerpts at page 342. But it's right at the conclusion of the Court's finding of a probation violation where he says he finds a serious and willful violation. And he's particularly focused on the second incident where the defendant went close to his ex-wife's home. He wasn't really as concerned about this failure to pay spousal support, and he wasn't even as concerned about the first incident, but it was the second incident after he knew his wife was upset. But even after finding this serious and willful violation, the Court states sentencing is a different part of this, and we've already had some discussions about what the right sidebar is. Those are the options that will be discussed at the time of sentencing. Your attorney will discuss that with you. But it's difficult to ignore the positive part of this as well. So this is a violation, and the Court's not minimizing the seriousness of it, but it's not necessarily a serious dash. We'll discuss that when sentencing is. So even after this lengthy hearing where the Court has heard all this evidence and found the serious and willful violation of probation, the Court's saying it's difficult not to ignore the positive part as well. I think from the outset of this case, this judge, who had seen this defendant over a period of years, was impressed with his character, believed that he could comply with probation, wanted to give him this very generous sentence at the outset, tried to, you know, ensure that the defendant fully understood the seriousness of all of these conditions he had to comply with. And he even said at one point, I believe it was either at the arraignment or later, he said, I thought you could do it. I gave you this opportunity because I thought you could do it. And even after hearing all this, he's still saying it's he's heard the defendant testify at length, give all of his various reasons why he went near the house on this occasion and that occasion, and the defendant, you know, clearly was trying to say that he hadn't been to deliberately, you know, scare his wife or anything. But in any event, the Court is saying, I haven't decided yet. We'll decide this at sentencing. He sent it out for a supplemental probation report, and then several weeks later they had the sentencing hearing. And so what reference is the supplemental probation report if you have it in the record? I'm sorry, Your Honor. We did include the entire record on appeal. The district court would have the entire record. We included all of the proceedings on the probation violation because that was most pertinent to the issues raised in this Court. But the probation officer had recommended prison. The prosecutor in the case recommended prison. The Court clearly carefully thought about it. And at the sentencing, in the final second sentencing proceeding, the defendant gave, again, a lengthy statement. And the Court stated he read and considered the probation report. He reviewed all of the evidence. But I think the Court was very concerned about what he viewed as a serious and willful violation of the protective order in the second instance, and that the defendant who was a very resourceful man, as shown in the original sentencing when the Court asked him, you know, how did you track down your wife at the police station, the defendant explained how he had GPS on his vehicles, he had installed spyware on his computer and monitored his wife's e-mails. He had a lot of capability of tracking down people. And the Court had warned him repeatedly, you can't do that. And then he essentially had found out where his wife lived, gone by her house once, been told by the son, she's mad, she's upset. And then 40 days later, did it again, and I think the Court felt this is too much and felt that that's not fair. Kennedy. Counsel, Judge Gould, with a question. Could you please address the argument of appellants that the State appellate court made an objectively unreasonable factual determination when it said that the defendant was going to put him back in prison? Your Honor, you're referencing the standard, of course, for review on habeas corpus in Federal court. And I believe that as we've been discussing, that the record very clearly shows that the court did not, the State court of appeal did not make an unreasonable determination of the facts. And under Harrington v. Richter, this Court would have to find that the State court's error, if it found error, was so lacking, or pardon me, not the error, but the State court's ruling on this claim was so lacking in justification that no reasonable jurist could disagree there was error. That is the point. I understand the standard. Right. I understand the ADPA standard. But what counsel's arguing is that the judge said if there's a violation, you're going to prison at the sentencing. And then he said that again at the arraignment on the violation charge. And so he's, I guess counsel's arguing that no reasonable jurist could say that this judge had an open mind. And, Your Honor, I think what I've been trying to explain is that at the sentencing, the court was, the initial sentencing, the court was trying to emphasize very clearly, do not violate probation in any way, and went over all the detailed provisions. At the arraignment, at that point, the charges were violation of a protective order and failure to pay child support. The court did not say at that point violation of any term will result in revocation. The court, or result in imprisonment, the court did not say that. Nor did the court say that after the hearing or at the time of the sentencing. The court found, based on a very lengthy hearing, that there was a violation of the protective order, which warranted the imposition of the prison term. I thought at the time of the probation, when they first came in on the probation violation, that there was some discussion when they talked about admitting the conditions. And the judge said at that point that if there's a violation, you're going to prison? Not at the change of plea. No, not at the change of plea. No, I'm talking about when he comes in on the probation violation. Right. There's an exchange that takes place before they set it for hearing. Yes. And that's what counsel is referring to. At that exchange, I thought the judge said if I find a violation, you're going to prison. This is where the attorney was saying, you know, possible negotiation. The judge says I can't negotiate this. And he said you either admit it or we have a hearing. And then he says we spent a great deal of time on this. Oh, I apologize. I'm mistaken. And he says, well, he's referring back to the sentencing. He said we spent a great deal of time on this. There isn't any ambiguity about what's going to happen if there's a violation. And it doesn't matter what kind it is. But, of course, at this point, we have two allegations of probation violation. It isn't as if the Court could say, oh, well, you failed to report your probation officer on revoking probation. That wasn't alleged. There was two specific violations alleged. So he was limited to those. But as I pointed out, even after this lengthy hearing, I mean, the Court — Well, he made it pretty clear by that statement that if there is a violation, he indicated previously what's going to happen, prison. Well, I think the Court at this point is upset that he's back in front of him. And we cited Leike v. United States at 510 U.S. 540, which actually has some — it's interpreting a Federal statute on judicial bias, but it actually has some very helpful language. And it explains clearly at pages 550 to 51 that if a judge is upset or annoyed or, you know, frustrated or anything, that doesn't indicate bias. I think this judge was upset that he was back there. But nevertheless, he made that statement. I don't think that indicates bias or that he prejudged the evidence because he then held a very lengthy hearing. And he many times overruled the prosecutor's objections on relevance, allowed evidence in. He allowed the defendant to testify at great length. And he then said at the end, as I quoted, you know, I'm not minimizing the seriousness, but you can't ignore the positive aspects of well. So he — so if he could have said then, all right, I told you, if you violate, you know, and I'm finding a violation, that's it, you're going to prison. He didn't say that. He was clearly very disturbed. Roberts. Okay. You're over your time. And I think no showing whatsoever that he was biased against this defendant. Okay. All right. Thank you, Your Honor. Thank you very much. Just briefly, Your Honor, I would say that I think the Court acknowledged and, indeed, on page 29 of the opening brief, the case of People v. Medina says the same or modified conditions, which was just the point the Court had a choice. And, again, going back to what the judge said when the arraignment on probation was, it actually made three statements that were very clear about its intention. There isn't any ambiguity. You're going to prison if there's a violation. It doesn't matter what kind of violation it is. If there's a violation of probation, he's going to prison. And third quote, either there's a violation or there isn't. If there is, he's going to prison. And the only way to get around that is to say the judge didn't mean what he said. And I don't think that's a fair interpretation. Well, so she — so counsel did point out, though, that he, at the end of the hearing, at the end of the evidentiary hearing, he makes comments about we're going to take up sentencing at a later time. Yeah. And he also calls for supplemental probation report. He had no choice, Your Honor. That's the law. To say the judge wasn't biased because he followed the law I don't think is an accurate test. The law in California is you have to request a supplemental probation report. And rule of court 4.111 says that if more than six months have passed since the original probation report, you're required to get a supplemental report. So you're — so just to follow up on Judge Gould's question about an unreasonable determination of the facts, your argument is that based on this record, the internal record before the State courts, there was an unreasonable determination of the facts by the State court of appeal. Yes. And therefore, there was a — in light of those unreasonable factual determinations, there was a violation of the law established by Morrissey and the other cases. Yes, Your Honor. Because the State court said there's no showing that the judge predetermined what it was going to do, and very clearly the judge did. So what's the remedy you would ask for? To go back for another hearing for an unbiased judge. Another full evidentiary hearing or a sentencing? I — well, Your Honor, in Johnson v. Gonzalez, they send it back for an entire hearing because if you find the judge is biased, it infects the entire proceeding. So I do believe it should go back for at least for a new sentencing. But I really think if you make a finding the judge is biased, it infects the entire process.  Thank you very much. Thank you. Thank you.
judges: Huff, Gould, Paez